L. J. RICE v. LONGFELLOW BROTHERS COMPANY.[1]

January 3, 1901.

Nos. 12,369—(149).

Duty of Agent.

> It is the duty of an agent to obey the instructions of his principal, and exercise in his employment reasonable skill and ordinary diligence. But he is not an insurer, and is only liable for losses arising from a neglect of such duties.

Purchase of Fruit—Quality—Charge to Jury.

> In this case the plaintiff, as the defendant's agent, was directed to buy a certain grade of fruit. The defendant alleged that he neglected to obey its instructions, whereby it sustained damages. The trial court instructed the jury, in effect, that there was no evidence tending to show that he could have procured a better quality of fruit. Evidence considered, and *held*, that the instruction was reversible error.

Action in the district court for Hennepin county to recover $1,580 for money paid in procuring and shipping two cars of pears as defendant's agent and for plaintiff's services. The case was tried before Brooks, J., and a jury, which rendered a verdict in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Reversed.

*Fred W. Reed*, for appellant.

*Edmund A. Prendergast*, for respondent.

START, C. J.

This court, upon a former appeal herein (78 Minn. 394, 81 N. W. 207), held that the contract which is the subject-matter of this action was one of agency, whereby the plaintiff undertook to buy certain fruit for the defendant. The case was sent down for a new trial, and the plaintiff amended his complaint, alleging that, as the agent of the defendant and by its direction, he purchased at Phœnix, Arizona, two cars of pears, and shipped them to it at Minneapolis, and in so doing paid out for the pears, the freight thereon, and for icing the cars in which they were shipped $1,380,

[1] Reported in 84 N. W. 660.

which sum, with $200 for his services, he claimed to recover. The answer, so far as here material, was to the effect that the plaintiff was instructed by the defendant to purchase only pears of the grade of the sample theretofore sent by plaintiff to it; that they be packed in California style, in boxes containing forty pounds net of pears in each box; that the plaintiff negligently failed to carry out such instructions, whereby the defendant sustained damages in the sum of $735. Verdict for the plaintiff for the sum of $1,565.-85, and the defendant appealed from an order denying its motion for a new trial.

The evidence tends to show that the pears were to be of the grade, weight, and packed as alleged in the answer. It also tends to show that the pears were to be purchased of a Mr. Smith, and selected from pears raised in his orchard; and, further, that the defendant knew that they must be secured from Mr. Smith out of his orchard, if at all. It was conceded by the defendant that the pears when they reached Minneapolis were worth $1,053.89. But the defendant gave evidence tending to show that they were not of the weight and grade and packed as directed, and, further, that if its directions had been complied with by the plaintiff they would have been worth on arrival $1,750. The trial court instructed the jury that, in any event, the plaintiff was entitled to a verdict for $1,053.89, the admitted value. This instruction is assigned as error.

Whether it be so or not depends upon whether there was evidence tending to show that the defendant was entitled to recover its alleged loss of profits. This question is necessarily involved in the next question, and need not be separately considered. The court instructed the jury that

"It does not appear from the evidence that the plaintiff could have secured different packing or a better quality of pears. Even though it were conceded that a better quality of pears was in the orchard at the time the pears in question were taken from it, it would not follow that the seller would have consented to sell them, or allow them to be taken, in pursuance to the provisions or terms of this contract, or made a part of the fruit shipped. The plaintiff is not liable for any failure to do what he could not do. He is liable for accepting any fruit contrary to his agree-

ment or instructions, but he is not now liable merely because he could not get a better quality of fruit."

This was excepted to, and is assigned as error. The effect of this instruction was to withdraw from the jury all consideration of loss of profits by the defendant which it might have received if the fruit had been of the quality the plaintiff was instructed to buy. That such was the intention of the learned trial judge in giving the instruction is evident from his memorandum, in which he says:

"It is the contention of the defendant that even though the pears it received were worth the full amount of their cost, and even though they were of full weight, it is entitled to offset alleged profits which it would have received had the fruit been of the quality which the plaintiff was instructed to buy. In my opinion, this contention is unwarranted, for the reason that there is not sufficient evidence that the plaintiff could have purchased a better quality of fruit."

If the pears were not like the sample and of the grade the plaintiff was instructed to buy, and for this reason they were worth less than they would have been if he had obeyed his instructions, and such loss was due to his neglect of his duties as defendant's agent, it would be entitled to recover of him the amount of its loss; that is, the difference between their actual cost at Minneapolis, $1,380, and what they would have been worth if they had been like the sample. The rule as to the duties of the plaintiff in the premises is well settled. It is the duty of an agent to obey the instructions of his principal, and exercise in his employment reasonable skill and ordinary diligence. But he is not an insurer, and is only liable for losses arising from a neglect of such duties. Lake City F. Mill Co. v. McVean, 32 Minn. 301, 20 N. W. 233. It follows that, if there is no evidence in this case tending to show that the plaintiff failed to exercise due care in the premises, he is not liable for the defendant's alleged loss of profits, and that the instruction was correct; otherwise, it was error. This matter, then, is narrowed by the record to the simple question whether there was evidence fairly tending to show that the plaintiff, by the exercise of due care, might have secured from Mr.

Smith out of his orchard fruit of the grade he was instructed to purchase.

The evidence shows that the plaintiff, before he was instructed to purchase the pears, personally examined the orchard, secured samples of the pears, and sent a box of them to the defendant, and advised it that the pears in the orchard would average about like the samples. He also testified on the question we are considering as follows:

"Q. Now, you sent a sample of these pears to Longfellow Brothers Company? A. Yes, sir. Q. Were there not in the orchard there plenty of pears so you might have filled one thousand boxes, of forty pounds net in each box, with the same grade of pears as you sent to Mr. Longfellow? A. That is what I did. Q. Will you answer my question? A. Why, I should say yes,—of course. Q. You might have taken those pears, and filled the boxes; nobody objected? A. Certainly not. Q. Mr. Smith allowed you to take the pears, and make full weight? A. Certainly. * * * Q. Now there were, were there not, gnarly, defective, and scarred fruit in the orchard? A. There was defective fruit; yes. * * * Q. What proportion was gnarly and defective fruit,—not first-class fruit? A. That is a pretty hard question to answer. Q. Of course you could not answer exactly, but you could make an estimate. A. My judgment is we threw out all that kind of fruit, and the pickers were instructed not to pick that kind of fruit. My judgment is we threw out about fifteen per cent. of that kind of fruit."

Mr. Smith, the owner of the orchard, testified on the subject as follows:

"Q. There was plenty of the first-class fruit to pack this one thousand boxes from, was there not? A. Yes. Q. And Mr. Rice was at perfect liberty to put only the good fruit in the boxes, was he not? A. That was the instructions to him and all the rest. Q. Of course, you can't state as to the packing, or the quality of the fruit that was packed, while you were there in the orchard, can you? A. No, sir; I cannot. * * * Q. There were, were there not, in this orchard, at that time, plenty of Bartlett pears to make one thousand forty-pound boxes of Bartlett pears, which were not gnarly, defective, scarred, or unmerchantable? A. Yes, sir, I think so."

This evidence quite clearly indicates that if in fact the pears were not like the sample, as the defendant's evidence tended to show, the plaintiff could have secured a better quality of pears

from the orchard in question. The instruction complained of was therefore reversible error. The plaintiff, however, claims that if it was error it was harmless, because the jury were instructed that if the pears were of an inferior quality to the samples, or were not packed according to instructions, or that the boxes were of insufficent weight, then they should not allow the plaintiff anything for his services, and they did include in their verdict the value of his services. It is true, as claimed, that this necessarily includes a finding that the plaintiff in all things followed his instructions, but the claim ignores the fact that important evidence bearing upon the question of such performance was withdrawn from the consideration of the jury by the instruction that it did not appear from the evidence that the plaintiff could have secured a better quality of pears, and that he is not liable merely because he could not do so. The error was not cured by the other portions of the charge and the verdict.

Order reversed, and a new trial granted.